

FILED

FEB 1 8 2014

IN THE UNITED STATES DISTRICT COURT CLERK, U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

UNITED STATES OF AMERICA,          )
                                   )
                   Plaintiff,      )
                                   )        CRIMINAL NO. 13-30269-MJR
        vs.                        )
                                   )
TAYLOR C. HARKEY,                  )
                                   )
                   Defendant.      )

## STIPULATION OF FACTS

The parties hereby agree and stipulate that, if this case had proceeded to trial, the
Government would have proven the following beyond a reasonable doubt:

1.    On July 18, 2013, Defendant Taylor C. Harkey and Co-Defendant Ramone
Cunningham discussed ways in which to get quick money because Harkey's electricity was
about to be turned off.   During the discussion, Cunningham suggested the idea of robbing a cab
driver.   Harkey agreed and Cunningham joined her in their plan to rob a cab.   Harkey, driving
her husband's car, with Cunningham in the passenger seat, went to another individual's house
and asked to use his telephone to call a cab.   Harkey, using a cellular telephone that belonged to
another individual, called Comfort Cab and arranged for a pickup at 2811 Residence Street in
Alton, Illinois, within the Southern District of Illinois.   This residence is vacant.

2.    When the driver realized that the house was vacant, he called his dispatcher who
told him that he would try to call the individual who ordered the cab.   While he was waiting for
the dispatcher to call back, Harkey reached through the driver's side rear window and pointed
what appeared to be a firearm at the driver's head.   Harkey told the driver, "Give me your
money or I'll blow your brains out."   She also reached inside the cab and grabbed the company

1

cellular telephone from the driver's hand.   The driver threw money, consisting of $36.00 in cab fares, out of the window.   He then drove away as Harkey bent down and began picking up the money.   The driver, using another individual's telephone, called Comfort Cab Company who subsequently notified the Alton Police Department.

3.      Comfort Cab informed the Alton Police Department that it had the number used to call the cab.   Using that information, the Alton Police Department went to the address of the individual associated with that number and learned that Harkey had used this individual's cellular telephone to call Comfort Cab.   Alton police officers proceeded to Harkey's residence where they arrested both Harkey and Cunningham, who happened to be there when they arrived.

4.      At the station, Harkey agreed to provide a voluntary, videotaped statement.   She admitted her part in the robbery, but claimed that the original idea to rob a cab driver came from Cunningham.   She said the two drove in her husband's car to another residence where she used another individual's cellular telephone to call Comfort Cab.   After placing the call, she and Cunningham drove to an alley near the vacant house.   She stated that Cunningham gave her a small black semi-automatic pistol that he had retrieved from his residence prior to them leaving to commit the robbery.   She said that, while Cunningham waited in the car, she walked over to the cab which was already there.   She said that she then reached into the driver's side rear window and pointed a gun at the cab driver's head and demanded all of his money.   She also admitted reaching into the cab and grabbing a cellular phone from the driver's hand.   She said that the cab driver threw a small amount of money out of the window which she picked up. When she went back to the car, Cunningham was in the driver's seat and they drove away.

5.      Cunningham also provided a videotaped, voluntary statement.   After initially denying any role in the robbery, Cunningham finally admitted that, when Harkey indicated that

2

she needed money quickly, he suggested to her that she could get quick money by robbing a cab. Harkey agreed to do so and the two of them left in Harkey's husband's car.   He admitted that, prior to the robbery, he gave Harkey a black Airsoft BB gun that looked like a real firearm.   He said that he stayed in the car while Harkey committed the robbery.   He said that he switched to the driver's seat when he saw her walking back, and that they then left the area.   He said that he initially went back to his house after they returned from the robbery, but then went to Harkey's residence a short time later where he was arrested.   Cunningham also admitted hiding the BB gun under the bed of one of the Harkey's children, allegedly at her direction.   Officers returned to Harkey's residence and recovered a Colt Defender CO2, .177 caliber BB gun, bearing serial number 12A01677, between the mattress and box spring of one of Harkey's children's bed.

6.    Therefore, the defendant, Taylor Harkey, aided and abetted by Ramone Cunningham, committed a robbery, as defined in Title 18, United States Code, Section 1951(b)(1), and threatened physical violence to the cab driver.   Harkey, again aided and abetted by Cunningham, knowingly took money from a driver with Comfort Cab, a taxi service, knowing that the cab driver gave Harkey the money because of the robbery.   The robbery of the Comfort Cab's driver obstructed, delayed, and affected commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), because Comfort Cab actively engages in interstate commerce by routinely transporting customers across state lines - - from Illinois to Missouri and vice versa, including cab service to Lambert Airport in St. Louis, Missouri, as indicated in Comfort Cab's ad in the business white pages.   In addition, the cab fares taken by Harkey, aided and abetted by Cunningham, depleted assets that Comfort Cab, who is insured by an insurance company headquartered outside of Illinois, would typically use to purchase goods in interstate commerce, such as gasoline or insurance.

3

7.   This stipulation of facts is intended only to provide the Court with a sufficient foundation to accept the defendant's guilty plea and is not necessarily an exhaustive account of the defendant's criminal activity.

STEPHEN R. WIGGINTON
United States Attorney

_____
TAYLOR C. HARKEY
Defendant

_____
ANGELA SCOTT
Assistant United States Attorney

_____
BENJAMIN B. ALLEN, SR.
Attorney for Defendant

Date: _____2 - 17 - 14_____          Date: _____2|18|14_____

4